**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARIJA PESA,<br><br>                    Plaintiff,<br><br>          v.<br><br>SCANDINAVIAN AIRLINES SYSTEM;<br>SCANDINAVIAN AIRLINES OF NORTH<br>AMERICA, INC., d/b/a SCANDINAVIAN<br>AIRLINES SYSTEM; DOES I-V; ABC<br>CORPORATIONS I-V,<br><br>                    Defendants. | Case No. 2:19-cv-20415 (BRM) (JSA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Scandinavian Airlines of North America, Inc. ("SANA")

and Scandinavian Airlines System's ("SAS") (together, "Defendants") Joint Motion to Dismiss

Plaintiff Marija Pesa's ("Plaintiff") Amended Complaint (ECF No. 17) pursuant to Federal Rules

of Civil Procedure 12(b)(2) and 12(c)[1] (ECF No. 31). Plaintiff opposed the Motion (ECF No. 32)

---

[1] Defendants seek an Order dismissing the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(c). (ECF No. 31.) SAS is seeking dismissal pursuant to Rule 12(b)(2), while SANA is seeking a judgment on the pleadings pursuant to Rule 12(c). (*See id.*) Both Defendants answered the Amended Complaint. (ECF Nos. 20, 21.) SANA raised failure to state a claim as an affirmative defense in its Answer (ECF No. 20 ¶ 45), and SAS raised lack of personal jurisdiction and failure to state a claim as affirmative defenses in its Answer. (ECF No. 21 ¶¶ 43–44.) Both answers were filed before the joint Motion to Dismiss. (*Compare* ECF Nos. 20, 21 *with* ECF No. 31.) But while "12(b)(6) motions must be made prior to any answer," *Newton v. Greenwich Twp.*, Civ. A. No. 12-238, 2012 WL 3715947, at *1 n.1 (D.N.J. Aug. 27, 2012), "[t]he difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing." *Id.* at *2. SANA's 12(c) motion, while not technically a motion to dismiss, will be "treated under the same standards as a Rule 12(b)(6) motion" because it "alleges that . . . [P]laintiff has failed to state a claim." *Muhammad v. Sarkos*, Civ. A. No. 12-7206, 2014 WL 4418059, at *1 (D.N.J. Sept. 8, 2014).

and Defendants filed a Reply (ECF No. 33). Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED.**

## I.    BACKGROUND

For the purposes of a motion for judgment on the pleadings pursuant to Rule 12(c) that alleges a plaintiff failed to state a claim, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Gebhart v. Steffen*, 574 F. App'x 156, 158 (3d Cir. 2014) ("Rule 12(b)(6) motions to dismiss and Rule 12(c) motions for judgment on the pleadings for failure to state a claim are judged according to the same standard.") Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). However, on a motion to dismiss pursuant to Rule 12(b)(2), "plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Therefore, the Court is not bound by the pleadings to determine jurisdiction, *see id.*, and, to the extent they are material, will include relevant allegations pertaining to jurisdiction in its summary of the facts, while construing all disputed facts in favor of the plaintiff. *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

### A.    The Parties

Plaintiff is a United States citizen and resident of the City of New York, County of Richmond, and the State of New York. (ECF No. 17 ¶ 4.) Plaintiff resides at 174 Cromwell

Avenue, Staten Island, NY 10304. (*See id.*) SAS is an international airline carrier operating daily flights in and out of Newark International Airport, and upon information and belief, SANA, "is a foreign corporation registered with the New Jersey Division of Corporations to do business in New Jersey and facilitates the operations of SAS in North America including New Jersey." (*Id.* ¶¶ 5–6.)[2] Upon information and belief, "Does I-V are individuals who caused [P]laintiff's injuries through their negligence" and "ABC Corporations I-V are business entities that caused [P]laintiff's injuries through their negligence." (*Id.* ¶¶ 7–8.)

### B.    Factual Background

Around May 3, 2019, Plaintiff bought airline tickets from SAS for a trip to Croatia. (*Id.* ¶ 9.) The flight itinerary had Plaintiff depart from Newark International Airport on May 14, 2019, arrive in Stockholm on May 15, 2019, and connect in Stockholm to another flight to Split, Croatia. (*Id.* ¶ 10.) The flight from Newark and the connecting flight in Stockholm were both SAS flights. (*See id.*) When Plaintiff initially arrived at Newark International Airport she told SAS personnel she needed wheelchair assistance "due to her disability and advanced age of 82 years." (*Id.* ¶ 11.) She was given a wheelchair and had no issues boarding the plane or deboarding upon arrival in Stockholm. (*Id.* ¶ 13.) While at Stockholm Airport, Plaintiff was met by another wheelchair attendant who "escorted [Plaintiff] to the gate where she was to embark on the connecting flight to Split, Croatia." (*Id.* ¶ 14.) When Plaintiff arrived at the gate for her connecting flight in Stockholm, "the attendant had [Plaintiff] stand up, withdrew the wheelchair, had [Plaintiff] sit in a seat and the attendant left the area." (*Id.* ¶ 15.) After some time had elapsed, "an SAS agent at

---

[2] The Declaration attached to Defendants' Motion to Dismiss clarifies "SAS is a consortium of corporations organized under the laws of Denmark, Norway, and Sweden" and "SAS currently maintains its headquarters at Frösundaviks Alle 1 in Stockholm, Sweden." (ECF No. 31-1 ¶ 4.) Further, "SANA is a subsidiary of SAS which is incorporated in New York State, and currently maintains its headquarters at 301 Route 17 North, Rutherford, New Jersey 07070." (*Id.* ¶ 5.)

the boarding counter motioned for [Plaintiff] to come to the counter." (*Id.* ¶ 16.) In response, Plaintiff "held up her documents" but "the boarding agent insisted that [Plaintiff] walk to the counter." (*Id.* ¶ 17.) The boarding agent "then directed [Plaintiff] to show her documents to another boarding agent at an adjacent counter." (*Id.* ¶ 18.) The other agent "waved at [Plaintiff] to move quickly." (*Id.*) When Plaintiff "tried to move from one counter to the next boarding person, she tripped over a belt stanchion." (*Id.* ¶ 19.) Plaintiff fell and "blacked out after her head hit the floor." (*Id.* ¶ 20.) After regaining consciousness, Plaintiff "found herself lying in a pool of blood with a crowd of people standing around her." (*Id.* ¶ 21.) Plaintiff "was dizzy and nauseous and did not understand what the people were saying" but "shortly thereafter," Plaintiff was placed on her flight to Split, Croatia. (*Id.* ¶¶ 22–23.) During her flight to Split, Plaintiff "fought back vomiting and endured terrible pain." (*Id.* ¶ 24.) Upon arrival in Split, Plaintiff "was immediately given medical attention by Croatian authorities." (*Id.* ¶ 25.) Because of the fall, Plaintiff "fractured her left shoulder, suffered a concussion, and had blood streaming down her face from a gash above her left eye." (*Id.* ¶ 26.) Despite these injuries, Defendants permitted Plaintiff to board the connecting flight to Split. (*Id.* ¶ 27.) As of the date of filing of Plaintiff's Amended Complaint, her fractured left shoulder has not healed properly. (*Id.* ¶ 28.)

Plaintiff alleges Defendants are strictly liable under the Warsaw Convention (Count One), and Defendants are liable for negligence (Count Two). (*Id.* ¶¶ 29–42.) Plaintiff further alleges this Court has jurisdiction over this case because a federal question is presented due to Defendants' alleged violation of the "Warsaw Convention as amended by the Montreal Convention." (*Id.* ¶ 1.) Plaintiff also asserts this Court "has pendent jurisdiction" over Plaintiff's negligence claim and has personal jurisdiction over Defendants because "each had sufficient contacts with New Jersey . . . as well as jurisdiction conferred by Article 33 of the Montreal Convention." (*Id.* ¶¶ 2–3.)

4

### C.      Procedural Background

On November 18, 2019, Plaintiff filed her Complaint. (ECF No. 1.) On June 1, 2020, Plaintiff's counsel filed a letter informing the Court the parties had stipulated to allow Plaintiff to file an Amended Complaint. (ECF No. 15.) On the same day, the Court granted Plaintiff's request to file an Amended Complaint. (ECF No. 16.) On June 5, 2020, Plaintiff filed an Amended Complaint. (ECF No. 17.) On July 21, 2020, Defendants answered the Amended Complaint. (ECF Nos. 20, 21.) On September 15, 2020, Defendants filed a joint Motion to Dismiss. (ECF No. 31.) On October 15, 2020, Plaintiff opposed (ECF No. 32), and on October 30, 2020, Defendants replied (ECF No. 33).

## II.    LEGAL STANDARDS

### A.      Federal Rule of Civil Procedure 12(b)(2)

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86–87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368 (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). Pursuant to Federal Rule of Civil Procedure 4(e), a district court may exercise personal jurisdiction according to the law of the state where it sits. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 (3d Cir. 2004) (citing N.J. Court Rule 4:4-4(c)). In other words, this Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank,*

*F.A.*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Therefore, "parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (citing *Carteret Sav. Bank, F.A.*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: specific jurisdiction and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 317); *see Metcalfe*, 566 F.3d at 334 ("Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction."). Specific jurisdiction exists when the defendant's activities in the forum state: (1) were "continuous and systematic" and (2) gave rise to the plaintiff's claims. *Id.* General jurisdiction requires only continuous and systematic contacts, and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

"Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the 'plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (citing *Pinker*, 292 F.3d at 368.) The defendant must have "'purposefully directed' his activities at residents of the forum and the litigation [must] result[] from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Metcalfe*, 566 F.3d at 334. Further, the Due Process Clause of the Fifth Amendment requires that a "defendant has constitutionally sufficient 'minimum contacts' with the forum" and that "the

court's jurisdiction comports with traditional notions of fair play and substantial justice." *Pinker*, 292 F.3d at 369 (citing *Burger King Corp.*, 471 U.S. at 474 and *Int'l Shoe*, 326 U.S. at 316).

While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*.") (emphasis added). "It may be that whatever special rule exists permitting continuous and systematic contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990).

## B.      Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988). In resolving a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See Rosenau*, 539 F.3d at 221.

Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards that apply to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x

57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, 2014 WL 4418059 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim." (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Gebhart*, 574 F. App'x at 157)).

### C.      Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, a plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more

8

than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DECISION

Defendants argue Plaintiff's Amended Complaint should be dismissed because (1) this Court does not have personal jurisdiction over SAS and (2) Plaintiff has failed to state a claim against SANA. (ECF No. 31-2.) The Court will address each argument in turn.

### A. Personal Jurisdiction as to SAS

Defendants argue "aside from claiming that SAS conducts flight operations in New Jersey, Plaintiff does not allege that SAS has deliberately targeted New Jersey consumers or otherwise invoked the benefits and protections of New Jersey law" that would justify exercising personal jurisdiction. (ECF No. 31-2 at 14.) Additionally, Defendants argue "Plaintiff's injury did not arise from SAS's operation of flights to and from Newark Airport, or from any interactions that Plaintiff alleges that she had with SAS at Newark Airport." (*Id.* at 15.) Lastly, Defendants argue SANA's New Jersey contacts cannot be imputed to SAS, exercising personal jurisdiction over SAS would

be unreasonable, and the Montreal Convention does not provide an independent basis for personal jurisdiction. (*Id.* at 17–26.)

Plaintiff argues SAS is subject to specific personal jurisdiction because at the time of the injury, both Plaintiff and SAS had "the common physical presence in New Jersey that the 1999 Montreal Convention, Article 33(2) requires." (*Id.* at 8.) Further, "Plaintiff's basis for bringing this action under [the Montreal Convention, Article 33(2)] directly 'arises out of' and is inextricably 'related to' SAS's commercial presence in New Jersey." (*Id.*) Although Plaintiff's injury occurred in Stockholm, Sweden, Plaintiff asserts "[g]iving the Plaintiff all favorable inferences as the Court is required to do at this stage of the litigation, the reasonable assumption is that the wheelchair assistance was arranged for by SAS personnel in Newark, New Jersey." (*Id.* at 9.) Plaintiff contends the minimum contacts requirement of New Jersey's long arm statute is satisfied because of "the sheer size and length of time of SAS's operations in New Jersey." (*Id.* at 10.)

Pursuant to Federal Rule of Civil Procedure 4(k), a federal district court may exercise jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey's long-arm statute permits the exercise of personal jurisdiction over non-resident defendants to the fullest extent as allowed under the Fourteenth Amendment of the United States Constitution. N.J. Ct. R. 4:4-4; *Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792, 796 (D.N.J. 1996).

Personal jurisdiction may be either general or specific. *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliation with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG*, 571 U.S. at 119 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*,

564 U.S. 915, 918 (2011)); *see also Int'l Shoe Co.*, 326 U.S. at 317. However, "[s]ince *International Shoe*, 'specific jurisdiction has become the centerpiece of modern jurisdictional theory.'" *Daimler AG*, 571 U.S. at 119 (quoting *Goodyear*, 564 U.S. at 925).

There is a three-prong test to determine whether a court possesses specific personal jurisdiction over a particular defendant. *Sandy Lane*, 496 F.3d at 317. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (quoting *Burger King*, 471 U.S. 462, 472 (1985) (quotation marks omitted)). The first prong is a "threshold" inquiry. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, if the two prior conditions are satisfied, a court may exercise specific personal jurisdiction should it otherwise "comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320). The plaintiff "bears the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court in personam jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)).

Moreover, "the minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252, 1255 (N.J. 1989) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980)). Indeed, the *Sandy Lane* inquiry is meant to ensure that an out-of-state defendant will not be haled into court based on "random, fortuitous, or attenuated

11

contacts or as a result of the unilateral activity of some other party." *Waste Mgmt., Inc. v. Admiral Ins.*, 649 A.2d 379, 386 (N.J. 1994).

Before deciding whether this Court has personal jurisdiction based on the analysis above, the Court will decide whether the Montreal Convention provides an independent basis for personal jurisdiction over SAS.

The Montreal Convention "was designed as a replacement for the Warsaw Convention" and it "governs international carrier liability for flights in between the United States and foreign states that are parties to the Convention, and for international flights having both their origin and destination in the United States." *DeJoseph v. Cont'l Airlines, Inc.*, 18 F. Supp. 3d 595, 600 (D.N.J. 2014) (citing Montreal Convention, 1999 WL 33292734, at *6–7); *Schaefer-Condulmari v. U.S. Airways Grp., Inc.*, Civ. A. No. 09-1146, 2009 WL 4729882, at *4 (E.D. Pa. Dec. 8, 2009) ("The Montreal Convention supersedes and replaces the earlier Warsaw Convention.") (citations omitted). Plaintiff asserts the Montreal Convention applies to this case and "Plaintiff has the option of bringing this case in New Jersey" pursuant to Article 33 of the Montreal Convention. (ECF No. 32 at 16, 18.)

Under Article 33(1) of the Montreal Convention:

> An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.

*Convention for Int'l Carriage by Air*, S. Treaty Doc. No. 106-45, 1999 WL 33292734, at *39 (May 28, 1999) (the "Montreal Convention"). Additionally, Article 33(2) of the Montreal Convention provides:

> In respect of damage resulting from the death or injury of a passenger, an action may be brought before one of the courts

12

> mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement

*Id.*

Recently, in *Kim v. Korean Air Lines Co.*, after quoting Article 33(2) of the Montreal Convention, the court explained that "courts 'have consistently concluded that the Montreal Convention affords subject matter jurisdiction, not personal jurisdiction.'" Civ. A. No. 2003636, 2021 WL 129083, at *3 (D.N.J. Jan. 14, 2021) (citing *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, Civ. A. No. 16-9791, 2018 WL 1888483, at *3 (S.D.N.Y. Apr. 5, 2018) (emphasis omitted)). In *Davydov v. Scandinavian Airlines System*, a case relied upon by Plaintiff, the court clarified neither the Montreal Convention nor the Warsaw Convention determined the existence of personal jurisdiction. Ltr. Order at 2–3, Civ. A. No. 19-17628 (D.N.J. Oct. 5, 2020), DE 28, *appeal docketed*, No. 20-3242 (3d Cir. Nov. 3, 2020); *see also Romero v. Argentinas*, 834 F. Supp. 673, 678 (D.N.J. 1993) (noting Article 28(1) of the Warsaw Convention, which has nearly identical language to Article 33(1) of the Montreal Convention, "does not determine the existence of personal jurisdiction or the appropriateness of venue in any particular Federal court"). Courts in other districts have made the same observation. *See, e.g.*, *Bandurin v. Aeroflot Russian Airlines*, Civ. A. No. 19-255, 2020 WL 362781, at *5 (N.D. Ill. Jan. 22, 2020) (noting Article 33 "confers subject-matter jurisdiction, not personal jurisdiction"); *Avalon Techs., Inc. v. EMO-Trans, Inc.*, Civ. A. No. 14-14731, 2015 WL 1952287, at *5 (E.D. Mich. Apr. 29, 2015) ("Article 33 confers jurisdiction on the courts of a nation-state, rather than a particular court within that nation-state."). Therefore, contrary to Plaintiff's allegation that jurisdiction is "conferred by Article 33 of the Montreal Convention," (ECF No. 17 ¶ 3), the Montreal Convention does not provide an

independent basis for jurisdiction. *Kim*, 2021 WL 129083, at *3 (finding that "the Convention, of its own force, does not confer jurisdiction here").

Because the Montreal Convention does not provide personal jurisdiction, the Court will now determine whether personal jurisdiction over SAS is otherwise proper. Plaintiff does not argue Defendants are subject to general personal jurisdiction in this Court. (*See* ECF No. 32 at 12 ("Plaintiff is not relying on a claim that SAS is subject to 'general jurisdiction' in New Jersey.").) Instead, Plaintiff argues this Court has personal jurisdiction because Defendant "must have engaged employees directly or by means of commercial arrangements with another airline or agent to service its passengers, i.e., ticketing, baggage handling and lounge services." (*Id.* at 15.) Accordingly, this Court analyzes its ability to assert personal jurisdiction over SAS pursuant to the three-prong, specific personal jurisdiction test outlined in *Sandy Lane*.

First, the defendant must have "purposefully directed [its] activity" at the forum. *Sandy Lane*, 496 F.3d at 317 (citation omitted). Here, Plaintiff merely alleges SAS "is an international airline carrier operating flights in and out of Newark International Airport on a daily basis." (ECF No. 17 ¶ 5.) Plaintiff supports this allegation by asserting SAS "purposely directed its activities towards and availed itself of the forum by conducting daily, regular and customary flights and related operations at Newark Airport, see Schroeder declaration at paragraph 18, Exhibit D." (ECF No. 32 at 14.) The paragraph of the exhibit to which Plaintiff refers states "[w]hile SAS has air traffic rights to fly to and from U.S. airports, SAS is not registered to do business in any U.S. state." (Ex. D. ¶ 18.) The following paragraph is highlighted by Plaintiff, suggesting Plaintiff meant to cite to paragraph 19 instead of paragraph 18. Paragraph 19 states, "SAS currently operates around 300,000 flights per year worldwide. SAS currently operates 3 daily flights to and from the State of New Jersey . . . ." (Ex. D. at ¶ 19.) Notably, Exhibit D is a declaration submitted on behalf

of SAS on a motion to dismiss in an entirely different case. (*See* Schroder Decl. Ex. at ¶¶ 18–19, *Davydov v. Scandinavian Airlines Sys.*, Civ. A. No. 19-17628 (D.N.J. Mar. 13, 2020)). In *Davydov*, Judge Arleo issued a letter order granting SAS's motion to dismiss for lack of personal jurisdiction. *Davydov v. Scandinavian Airlines Sys.*, Civ. A. No. 19-17628 (D.N.J. Oct. 5, 2020), ECF No. 28 at 5. In *Davydov*, the plaintiff sued SAS after he was injured on an unstable staircase when disembarking from one of SAS's flights in Estonia. *Id.* at 1. The court declined to consider whether the plaintiff's arguments that "SAS purposely availed itself of New Jersey by (1) conducting regularly scheduled flights and related business operations from Newark Liberty International Airport . . . , and (2) publicly advertising its 'renovated lounge' at Newark Airport" because it was "clear that [p]laintiff's alleged injuries," which occurred in Estonia, did not arise out of or relate to SAS's contacts with New Jersey. *Id.* at 3–4. Several other courts have issued similar holdings. *See, e.g.*, *Kurzweil v. Amtrak*, Civ. A. No. 19-19388, 2020 WL 5760423, at *3 (D.N.J. Sept. 28, 2020) (finding no specific jurisdiction over plaintiff's slip and fall claim occurring in Washington, D.C. because Amtrak "could not have reasonably foreseen that their ticket sales or business in New Jersey—no matter how extensive—would subject them to suit in New Jersey for wholly unrelated negligence claims that occurred in Washington, D.C."); *Mali v. Brit. Airways*, Civ. A. No. 17-685, 2018 WL 3329858, at *7 (S.D.N.Y. July 6, 2018) ("Though [d]efendant inarguably engages in purposeful activities targeting airports and travelers located in New York, there exists no 'substantial relationship' between that business activity and [p]laintiff's claims in this lawsuit," which arose "almost entirely out of [d]efendant's conduct in Mumbai.").

Here, regardless of whether SAS "purposefully directed" its activities at New Jersey, Plaintiff has not satisfied her burden of establishing this Court has specific personal jurisdiction over SAS because her claims do not arise out of SAS's activities in New Jersey. *Bristol-Myers*

*Squibb Co. v. Superior Ct. of Calif., San Francisco Cnty.*, 137 S. Ct. 1773, 1776 (2017) (providing that "[w]hat is needed is a connection between the forum and the specific claims at issue" for proper exercise of specific personal jurisdiction). Plaintiff alleges she was injured when "she tripped over a belt stanchion" before boarding her flight to Split, Croatia in the Stockholm Airport. (ECF No. 17 ¶ 19.) She attempts to connect this injury to New Jersey by alleging she made wheelchair arrangements through SAS personnel at Newark Airport, was provided with a wheelchair again in Stockholm, but then right before boarding her flight to Split, the attendant in Stockholm "had [her] stand up, withdrew the wheelchair, and had [her] sit in a seat" while "the attendant left the area." (*Id.* ¶¶ 12–16.) Plaintiff alleges "SAS . . . negligently withheld wheelchair assistance from [her] as she attempted to embark on her connecting flight from Stockholm to Split" and she "sustained serious injuries" as a result. (*Id.* ¶¶ 39–41.) Plaintiff specifically alleges when she "was provided with wheelchair assistance" in Newark, "she boarded the plane without incident." (*Id.* ¶ 12.) Any negligence alleged by Plaintiff occurred in Stockholm, not Newark. Therefore, Plaintiff does not allege the necessary connection between New Jersey, the forum state, and her injuries, which arose in Stockholm, Sweden. Accordingly, this Court lacks specific personal jurisdiction over SAS.[3]

---

[3] Plaintiff also argues "[i]f this Court believes New York is the appropriate forum Plaintiff respectfully requests that the action be transferred to the District of New York as opposed to having the case dismissed." Plaintiff provides no other argument in favor of transfer to any district in New York. (*See generally* ECF No. 32.) While the burden of establishing a court's exercise of personal jurisdiction is "light," a plaintiff is still required "to establish a prima facie showing of jurisdiction." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009) (citing *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992)). Because Plaintiff has not provided a prima facie showing of jurisdiction in any of the district courts in New York, transfer is not proper at this stage of the litigation.

### B.      Failure to State a Claim Against SANA

Defendants filed their Rule 12(c) motion after answering the Amended Complaint. (*Compare* ECF Nos. 20, 21 *with* ECF No. 31.) "[A] motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) may be filed at any time, and may be the functional equivalent of a motion to dismiss." *United States v. Est. of Elson*, 421 F. Supp. 3d 1, 4 (D.N.J. 2019). When, as here, a Rule 12(c) movant argues the complaint fails to state a claim, the Rule 12(b)(6) standards apply. *See Turbe*, 938 F.2d at 428. Therefore, Defendants' Rule 12(c) motion will be analyzed under Rule 12(b)(6) standards. *See Est. of Elson*, 421 F. Supp. 3d at 4.

Defendants argue "Plaintiff has named SANA as a defendant while pleading facts which only concern SAS." (ECF No. 31-2 at 6.) Defendants note the Amended Complaint "does not contain any allegations against SANA, except for the singular, unsubstantiated assertion that SANA 'facilitates the operations of SAS in North America including New Jersey.'" (*Id.* (quoting ECF No. 17 ¶ 6).) Further, Defendants contend "SANA is not alleged to be an air carrier, to engage in the business of air transportation, or to have played any role whatsoever in Plaintiff's carriage" and therefore cannot be liable under either the Warsaw or Montreal Convention. (ECF No. 31-2 at 8.)

"Liability for personal injury is governed by Article 17" of the Montreal Convention. *Schaefer-Condulmari*, 2009 WL 4729882, at *4. Article 17(1) states a "carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, 1999 WL 33292734, at *33. That is, only air carriers may be held liable for injuries from an "accident" under Article 17(1). *Maranga v. Abdulmutallab*, 903 F. Supp. 2d 270, 273 (S.D.N.Y. 2012) ("The Montreal Convention

17

provides strict liability for airline carriers, and *only* carriers, for bodily injury arising out of international air travel."); Montreal Convention, 1999 WL 33292734, at *30, Art. 1 ("The Convention applies to all international carriage of persons, baggage, or cargo performed by aircraft for reward."). Courts interpreting Article 17 have defined "the carrier" as "only the airline that transports the injured passenger." *Pflug v. Egyptair Corp.*, 961 F.2d 26, 31 (2d Cir. 1992) (dismissing Montreal Convention claim because plaintiff brought suit against Egyptair Corp., a subsidiary of Egytpair that did not operate the plane on which plaintiff was injured). In *Maranga*, the court similarly found Air France-KLM was "not an airline 'carrier' in any sense of the word, but rather a holding company" and held the plaintiff had "no claim against AF-KLM under the Montreal Convention." 903 F. Supp. 2d at 273.

Plaintiff's Amended Complaint does not contain any allegations that SANA is an "air carrier" within the meaning of the Montreal Convention. (*See generally* ECF No. 17.) Further, Plaintiff does not allege, for example, that SANA contributed in any way to an injury-causing accident that subjects it to liability under the Montreal Convention. (*See id.*) And like the defendants in *Pflug* and *Maranga*, SANA is not an "air carrier" under the Montreal Convention, since it is merely a subsidiary of SAS—the carrier responsible for consumer flight. (ECF No. 31-1 ¶ 5.) Additionally, Plaintiff's claims are almost entirely alleged against SAS, besides alleging SANA is registered "to do business in New Jersey and facilitates the operations of SAS in North America including New Jersey." (*Id.* ¶ 6.) Because the allegations in the Amended Complaint do not allow "the court to draw the reasonable inference that [SANA] is liable for misconduct alleged," Plaintiff has not properly stated a claim. *See Ashcroft*, 556 U.S. at 678. Accordingly, Defendants' 12(c) motion is **GRANTED.** However, dismissal of Plaintiff's Amended Complaint is without prejudice. *See In re Nat'l Pool Const., Inc.,* Civ. A. No. 12-2157, 2012 WL 3277107, at

*2 (D.N.J. Aug. 9, 2012) ("[B]efore dismissing a complaint under Rule 12(c), 'a district court must permit a curative amendment, unless an amendment would be inequitable or futile.'") (quoting *Phillips*, 515 F.3d at 236); *Warren v. Fisher*, Civ. A. No. 10-5343, 2013 WL 1164492, at *9 (D.N.J. Mar. 19, 2013) (granting Rule 12(c) motion without prejudice).[4]

Accordingly, Defendants' Joint Motion to Dismiss—that is, its Motion to Dismiss pursuant to Rule 12(b)(2) and 12(c)—is **GRANTED WITHOUT PREJUDICE.**

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 31) is **GRANTED WITHOUT PREJUDICE**. An appropriate Order follows.

Date: April 27, 2021                              */s/ Brian R. Martinotti*
                                                   **HON. BRIAN R. MARTINOTTI**
                                                   **UNITED STATES DISTRICT JUDGE**

---

[4] Defendants additionally argue there is no basis for permitting jurisdictional discovery, while Plaintiff argues discovery is needed to determine whether SANA is an agent of SAS. (ECF No. 33 at 12; ECF No. 32 at 19.) However, since this Court has dismissed the claims against SANA, it will not address the arguments regarding jurisdictional discovery as there is no complaint pending for which to conduct such discovery. If Plaintiff files a Second Amended Complaint, she may renew her request for additional discovery.